COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

CHRISTOPHER DANIEL HOPPER,                   )                    No.  08-01-00326-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                     County Court at Law

                                                                              )

THE STATE OF TEXAS,                                     )                   of Ector County, Texas

                                                                              )

Appellee.                           )                           (TC# 00-5301)

 

O
P I N I O N

 

Christopher
Daniel Hopper appeals from his conviction for the offense of resisting
arrest.  A jury found Appellant guilty
and the court assessed his punishment at a fine of $350 and confinement in the
county jail for six months.  The trial
court suspended the sentence and placed Appellant on community supervision for
one year.  Finding legally sufficient
evidence to support the conviction, we affirm.

FACTUAL SUMMARY








Chris
Myers, Afton White, and Gary Lane are police officers with the City of
Odessa.  During the early morning hours
of November 8, 2000, all three officers were dispatched to a fight at Joe=s Italian Food Restaurant in
Odessa.  The dispatcher informed them
that a taxi driver was the complainant. 
Upon arriving, the officers saw a taxi driver and talked to him for a
few minutes.  There was a broken beer
bottle on the hood of the taxi.  At one
point, Lane and White went to the back door of the restaurant and interviewed
some individuals while Myers continued to speak with the cab driver.  Myers then walked up to the back door of the
restaurant and spoke with Justin Bowan who consented to Myers entering the
building.  Myers talked with Bowan to get
Ahis side of the story.@ 
After a few minutes, Myers went back outside to further interview the
taxi driver.  Suddenly, Myers heard
yelling coming from inside of the restaurant and saw both Lane and White rush
into the building.  Believing an
emergency existed, Myers followed the other officers inside.

White
and Lane entered the restaurant because they heard yelling, screaming, and the
sound of chairs being scooted around. 
Believing another fight was in progress, they ran inside.  White saw Appellant and another man chasing
one another and running towards the bathroom. 
Both men ran inside the bathroom, slammed the door, and continued to
yell at one another.  Eventually, the
officers and restaurant owner were able to persuade them to open the bathroom
door.  Both men continued to yell and
shove one another while the officers removed them.  It was obvious to the officers that Appellant
was intoxicated.








In
an attempt to get Appellant under control, Myers instructed him to sit down at
a table.  Myers stood behind Appellant
while one of the other officers stood in front of him.  Despite Myers=
instructions to the contrary, Appellant repeatedly put his hands in his pockets
and directed profanities at Myers. 
The officers became concerned by this behavior since they had not done a
weapons pat-down and Myers finally pulled Appellant=s
hand out of his pocket.  As Myers did so,
Appellant swung his fist at Myers.  He
then jumped out of the chair and tried to turn towards Myers.  Myers immediately decided to arrest
Appellant, placed a restraining hold on him, and pulled him to the ground so
that it would be easier to handcuff him. 
Another officer assisted Myers but they had difficulty gaining control
of Appellant who continued to fight them by swinging at them with his arms and
kicking them.  During this entire
struggle, Myers repeatedly told Appellant that he was under arrest and to stop
resisting.  At one point, Appellant swung
his right hand at the officers.  The blow
struck the other officer in the arm or shoulder before striking Myers in the
chest.  Myers struck Appellant in the
face in an effort to gain control. 
Although the officers eventually succeeded in handcuffing Appellant, he
continued to struggle.  Because Appellant
suffered a black eye and cut during the struggle, Myers called an
ambulance.  The paramedics were unable to
treat Appellant because he continued to be belligerent and uncooperative and
consequently, he was removed from the ambulance and transported to the hospital
by one of the officers.  

LEGAL SUFFICIENCY

In
his sole point of error, Appellant complains that the trial court erred in
denying his motion for an instructed verdict. 
This argument is in reality a challenge to the legal sufficiency of the
evidence supporting his conviction.  Brimage
v. State, 918 S.W.2d 466, 470 & n.3 (Tex.Crim.App. 1994); Madden v.
State, 799 S.W.2d 683, 686 & n.3 (Tex.Crim.App. 1990).  Therefore, we will apply the standard of
review applicable to a legal sufficiency challenge.  If the evidence is sufficient to sustain the
conviction, then the trial judge did not err in overruling Appellant=s motion for instructed verdict.

Standard of Review








In
reviewing the legal sufficiency of the evidence to support a criminal
conviction, we must review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318‑19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979);
Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991).  This familiar standard gives full play to the
responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
to ultimate facts.  Jackson, 443
U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of
fact to do so.  See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991).  Instead,
our duty is only to determine if both the explicit and implicit findings of the
trier of fact are rational by viewing all of the evidence admitted at trial in
a light most favorable to the verdict.  Adelman,
828 S.W.2d at 422.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.  Further, the standard of review is the same
for both direct evidence and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158.

Elements of Resisting Arrest

A
person commits an offense if he intentionally prevents or obstructs a person he
knows is a peace officer or a person acting in a peace officer=s presence and at his direction from
effecting an arrest, search, or transportation of the actor or another by using
force against the peace officer or another. 
Tex.Pen.Code Ann. ' 38.03(a)(Vernon 1994).  It is no defense to prosecution under this
section that the arrest or search was unlawful. 
Tex.Pen.Code Ann. ' 38.03(b).  The information alleged that Appellant did
then and there:

[I]ntentionally
prevent and obstruct Chris Meyers, a person the defendant knew to be a peace
officer, from effecting the arrest of Christopher Daniel Hopper, by using force
against said peace officer.  

 

Use of Force Against the Arresting Officer








Citing
Bryant v. State, 923 S.W.2d 199 (Tex.App.--Waco 1996), pet. ref=d, 940 S.W.2d 663 (Tex.Crim.App.
1997), Appellant argues that the evidence is legally insufficient because he
directed force Atowards@ Myers but he did not direct any force Aagainst@
him.








In
Bryant, the defendant, when told he was under arrest, stiffened up and
jerked back with a violent backward swing of his hand as the officer attempted
to handcuff him.  The blow came close to
striking the officer=s
face.  Bryant then swung around in an
attempt to face the officer.  In
response, the officer placed Bryant in a restraint by grabbing him around the
neck.  The forward motion carried both the
officer and Bryant off of a porch and they fell to the ground.  While on the ground, Bryant held his arm in a
stiff manner underneath him so that the officer could not handcuff him.  Finally, Bryant stopped struggling and the
officer handcuffed him.  On appeal,
Bryant made the same argument urged by Appellant here.  Characterizing his actions as Aevasive@
and as mere attempts to pull his arms out of the officer=s
grasp or to flee, he claimed that he did not direct any violence toward the
arresting officers.  Bryant, 923
S.W.2d at 206.  While acknowledging that
there is a distinction between striking an arresting officer=s arm and simply pulling one=s arm away, the court of appeals noted
that if the facts demonstrate that the act of pulling one=s arm away is done in such a manner
that it constitutes the use of force against the officer, such action is
prohibited by Section 38.03.  Id.  Consequently, the court found the evidence
sufficient to sustain the conviction.  In
making this determination, the court of appeals disagreed with some of the
language in Raymond v. State, 640 S.W.2d 678, 679 (Tex.App.‑‑El
Paso 1982, pet. ref=d).  In Raymond, this court held the
evidence insufficient to sustain the defendant=s
conviction for resisting arrest where the defendant merely pulled his arm away
from the arresting officer.  The opinion
drew a distinction between violence directed Atoward@ an officer and general violent force
utilized in pulling away from an officer during the course of an arrest.  AWhere
violence toward the officer is present, Section 38.03 applies, . .
.  [but,] [w]here violent force is not
directed at the arresting officer, the circumstances are not exigent.@ 
Raymond, 640 S.W.2d at 679. 
The Bryant court criticized this language because Section 38.03
prohibits the use of force against a peace officer, not toward him.  Bryant, 923 S.W.2d at 207.  The point made by Bryant is well taken
and we disavow the language in Raymond using the word Atoward@
in connection with Section 38.03.

It
bears repeating that Section 38.03 prohibits the use of force against an
officer, not the use of force toward the officer.  Id. 
AToward@ means Ain
the direction of@ while Aagainst@
is defined as Ain
opposition to or hostility to.@  Webster=s New Universal Unabridged Dictionary
34, 1930 (2nd ed. 1983); Bryant,923 S.W.2d at 207, citing Merriam‑Webster=s Collegiate Dictionary 21, 1248 (10th
ed.1993).  Thus, a person who uses force
in order to shake off an officer=s
detaining grip, whether by pushing or pulling, may be guilty of resisting
arrest under Section 38.03.  Bryant,
923 S.W.2d at 207-08.  For example, if a
person pulls his arm away in a sufficiently violent manner and with enough
force to throw the arresting officer to the ground, he is guilty of resisting
arrest under Section 38.03.  This is true
even though he forcefully pulled Aaway@ from the officer, not Atowards@
him.

Here,
the evidence reveals that Appellant intentionally directed force against Myers
and the other arresting officer.  As
Myers attempted to arrest handcuff Appellant, he struck Myers in the chest with
his fist and he kicked both officers during the struggle.  This evidence alone is sufficient to sustain
the conviction for resisting arrest. 
Consequently, the trial court did not err in overruling Appellant=s motion for instructed verdict.  We overrule the sole point of error and
affirm the judgment of the trial court.

 








June 20, 2002

                                                                         


ANN CRAWFORD
McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

(Publish)